**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| Ana E. Medina Eckart | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File # |
| | ) | |
| v. | ) | _____ |
| | ) | |
| Allstate Northbrook Indemnity | ) | |
| Company, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

Now comes Ana Eckart, the Plaintiff in the above-styled civil action, and presents her Complaint for Damages against Defendant Allstate Northbrook Indemnity Company as follows:

### JURISDICTION AND VENUE

1.

This case arises under the civil enforcement provisions of the Racketeer Influenced and Corrupt Organizations Act at 18 USCA §1961 et. seq. and the civil enforcement provisions of the Georgia Racketeer Influenced and Corrupt Organizations Act at O.C.G.A. §16-14-1 et seq. Plaintiff also asserts claims arising under the laws of the State of Georgia for fraudulent inducement to enter a contract and for recission of the contract based upon fraudulent inducement.

1

2.

This Court has subject matter jurisdiction of this action by virtue of a cause of action arising under federal law pursuant to 28 USCA §1331 and by virtue of diversity of citizenship pursuant to 28 USCA §1332(c)(1).

3.

The same transactions and occurrences giving rise to the Plaintiffs' claims under civil RICO also give rise to pendant causes of action arising under the laws of the State of Georgia including violation of Georgia Racketeer Influenced and Corrupt Organizations Act, fraud and breach of contract. This Court has supplemental subject matter jurisdiction over these claims pursuant to 28 U.S.C.A. § 1367(a).

4.

The Plaintiff hereby subjects herself to the jurisdiction of this court.

5.

Defendant Allstate Northbrook Indemnity Company is a business corporation formed under the laws of the State of Illinois with its principal place of business in that state. This Defendant conducts significant business in the State of Georgia and it entered both contracts relevant to this action in the State of Georgia: the contract of automobile insurance that the Defendant

entered with its insured, Crista Ballew and the settlement contract entered with Ms. Eckart.

6.

Defendant Allstate may be served with process upon its registered agent in the State of Georgia: Linda Banks, c/o CT Corporation System, 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia 30046-4805.

7.

Venue is proper in this Court under 28 USCA §1391.

## FACTS

8.

A motor vehicle collision occurred on January 8, 2020 inside the City of Cartersville, Georgia on Ga. Highway 61 at its intersection with Fite Street. The collision involved an automobile driven by the Plaintiff, Ms. Eckart and a vehicle driven by Crista Ballew.

9.

Ms. Eckart sustained personal injuries in the collision and she incurred medical and related expenses, lost wages, pain and suffering as a result of her injuries. The collision and Ms. Eckart's resulting injuries and

damages were the sole, direct and proximate result of the negligence of Crista Ballew.

10.

At the time of the collision, Ms. Ballew was insured under an automobile liability insurance policy issued by Defendant Allstate.

11.

Ms. Eckart communicated by telephone and email with insurance adjusters who were the employees and agents of Allstate about her claims against insured Ballew resulting from the motor vehicle collision, and about her claims against Allstate by virtue of the language of its automobile liability policy insuring Ms. Ballew.

12.

In telephone and email communications during the early part of 2021, Allstate adjuster, employee and agent Dwalyn Roberts – on behalf of Defendant Allstate – offered to settle all of Ms. Eckart's claims against the insured and insurer.

13.

Specifically, Roberts and Defendant Allstate agreed to pay Ms. Eckart $16,378.00 in settlement of all of her claims arising from the collision. As consideration for the $16,378.00 settlement amount to be

4

paid to her, Defendant Allstate and Roberts required Ms. Eckart to execute a "Release of All Claims" document that Allstate and Roberts drafted and provided to her.  Allstate and Roberts promised to pay the $16,378.00 amount only after they received Ms. Eckart's executed release agreement. Ms. Eckert accepted the settlement offer.

14.

To conclude the settlement process, on February 1, 2021 Roberts and Defendant Allstate sent an email to Ms. Eckart with two attachments, one was a letter discussing the terms of the settlement, the other was the release that Ms. Eckart was required to execute so that Allstate and Roberts would forward the settlement funds to her.

15.

The letter Robert and Allstate attached contained some vague, confusing and perhaps even contradictory language; Roberts and the Defendant purposefully drafted the letter in this manner as a part of its fraudulent scheme and artifice described below.  Nonetheless, in the letter Roberts and Defendant Allstate acknowledged that they had valued Ms. Eckart's claim at the promised settlement amount of $16,378.00, and they provided a monetary breakdown to demonstrate their reasoning in arriving

5

at that settlement amount. In the letter, Allstate and Roberts also referenced its payment of "the amount of money noted in the release."

16.

The release document Allstate and Roberts emailed to Ms. Eckart memorialized the terms of the settlement agreement between these parties. Under the express terms of the release agreement, Allstate agree to pay Ms. Eckart $16,378.00 in full settlement of all of her claims against Ms. Ballew and Allstate arising from the collision. The release agreement required Ms. Eckart to satisfy her medical debts and liens from the settlement amount paid to her.

17.

As per the terms of the settlement agreement, Ms. Eckart reasonably relied upon Allstate's promise to pay her $16,378.00, she executed the Release of All Claims document that Allstate and Roberts provided her, and she emailed the executed document to Allstate on February 3, 2021, thereby releasing all of her claims against Ms. Ballew and Allstate arising from the collision. Upon delivery of the executed release to Allstate, Ms. Eckart fulfilled her duty to Allstate under the terms of the contract of settlement.

18.

On February 4, 2021, only after receipt of the executed release, Roberts and Defendant Allstate sent another email to Ms. Eckart. Into this email, Roberts and Allstate drafted some nonsense, but in relevant part notified Ms. Eckart that she would not receive the promised settlement check in the amount of $16,378.00; rather they would send her a check in the amount of $3,782.50. Roberts and Allstate then instructed Ms. Eckart to pay all but $560.00 of that amount to her medical providers.

19.

Allstate drafted the $3,782.00 check on February 4, 2021 and mailed it to Ms. Eckart through the U.S. Postal Service on February 5, 2021.

20.

Despite the express terms of the settlement agreement, and at the time that Allstate made the settlement offer, it had no intention, whatsoever, of actually paying the $16,378.00 settlement amount to Ms. Eckart. The false promise to pay that amount was made pursuant to a fraudulent scheme and artifice to induce Ms. Eckart to execute and tender the Release of All Claims document to Allstate, while paying Ms. Eckart only a small fraction of the promised and agreed upon $16,378.00 settlement amount.

7

21.

The ultimate result of this fraudulent scheme and artifice is that Allstate unlawfully retained $12,595.50 of the total $16,378.00 agreed upon settlement amount and which amount is the property of Ms. Eckart.

22.

In the foregoing, Allstate and Roberts took advantage of Ms. Eckart because she did not have counsel, she was inexperienced and unsophisticated in the settlement of insurance claims and because she was significantly limited in her ability to communicate in English.

23.

Upon information and belief, Defendant Allstate, through its officers, directors, management personnel and employees has in place policies, procedures, protocols and/or customs pursuant to which it routinely enters into firm, binding settlement agreements with those injured as a result of its insureds' negligence, then upon receipt of the releases from the injured claimants, the Defendant insurer through its employees and agents forwards settlement checks to those persons in amounts far below the agreed upon settlement amounts, thereby illegally retaining the claimants' funds.

24.

Upon information and belief, in addition to the foregoing, Defendant Allstate has fully acquiesced in and ratified the illegal and fraudulent conduct of its employees, servants and agents that is described above.

25.

Defendant Allstate has reaped significant financial benefits from the illegal and fraudulent schemes described above.

26.

Upon receipt of the reduced settlement check, Ms. Eckart (through undersigned counsel) immediately notified Defendant Allstate, in writing, of her intent to rescind the contract of settlement, she demanded that Allstate immediately agree to recission of the Release of All Claims contract. Ms. Eckart also immediately tendered the $3,782.00 settlement check back to Allstate. Allstate did not respond to the communique.

27.

Allstate is on timely notice of Plaintiff's rescission of the fraudulently induced contract entered with the Defendant insurer in settlement of the underlying negligence claims against Defendant Ballew.

9

COUNT I – Racketeer Influenced Corrupt Organizations Act at 18 USCA
§1961 et. seq.

28.

The Plaintiff incorporates by reference the contents of this entire
complaint as if fully set out herein.

29.

Allstate, Roberts and its various officers, directors, management and
non-management personnel who were involved in the criminal and
fraudulent schemes described herein are "persons" as defined in 18 USCA
§1961(3). Defendant Allstate and its employees who were involved in the
criminal and fraudulent schemes described herein are "enterprises" as
defined in 18 USCA §1961(4).

30.

As more fully set out above, upon information and belief, Allstate
through its officers, directors, management personnel and other employees
developed and implemented a criminal and fraudulent scheme pursuant to
which it would offer to settle claims of unsophisticated injured parties
against its insureds for sums certain, require those claimants to first fully
comply with the terms of the settlement agreements by return of executed
releases, and then use various fraudulent schemes and artifices to justify

sending payment to the claimants in amounts less than the contracted settlement amounts.

31.

Through implementation of this scheme, Allstate would illegally withhold for its sole use and benefit funds that were the lawful property of the claimants; thereby Allstate enjoyed significant financial benefits as a result of this criminal and fraudulent scheme.

32.

Upon information and belief, Allstate and its employees have employed this criminal and fraudulent scheme against more than one victim on more than one occasion.

33.

Allstate and its employees communicated with their victims by means of telephone and emails sent over wires across state lines in furtherance of their criminal and fraudulent schemes. Allstate and its employees sent items to its victims via the U.S. Postal Service in furtherance of its criminal and fraudulent schemes.

34.

Allstate's use of the telephone and email over the wires and across state lines to communicate with its victims in furtherance of its criminal

and fraudulent schemes, as in this case, constitutes wire fraud in violation of 18 USCA §1343.

35.

Allstate's use of the U.S. Postal Service to mail items to its victims in furtherance of its criminal and fraudulent schemes, as in this case, constitutes mail fraud in violation of 18 USCA §1341.

36.

Violations of 18 USCA §§1341 and 1343 are predicate acts constituting "racketeering activities" as that term is defined under 18 USCA §1961(1). As Allstate and its employees have conducted this criminal and fraudulent conduct on more than one occasion against more than one victim, their unlawful conduct constitutes a "pattern of racketeering activity" as that term is defined under 18 USCA §1961(5).

37.

In the foregoing conduct, Allstate received income derived from a pattern of racketeering activity and it used that income and/or the proceeds of such income in the operation of an enterprise engaged in interstate commerce. Allstate and its employees described above, through a pattern of racketeering activity directly and/or indirectly maintained control of an enterprise engaged in interstate commerce.

38.

By virtue of the foregoing, Defendant Allstate has been directly and indirectly involved in criminal and fraudulent conduct in violation of the Racketeer Influenced and Corrupt Organizations Act pursuant to 18 USCA §1962(a) and (b).

39.

Pursuant to its policy and custom of criminal and fraudulent conduct described above, Defendant Allstate and the individuals entered into a contract of settlement with Ms. Eckart whereby the insurer agreed to pay Ms. Eckart $16,378.00 in full settlement of all of her claims arising from a motor vehicle accident caused by the negligence of its insured.

40.

At no time did Allstate and the individuals intend to pay Ms. Eckart $16,378.00. Rather, Allstate and the others employed a scheme and artifice to reduce the $16,378.00 contract amount to a net sum of $560.00 to be paid to Ms. Eckart. Through this false promise, scheme and artifice, Allstate induced Ms. Eckart to enter the settlement agreement thereby relinquishing her right to pursue just compensation and her right to be made whole with respect to the damages she suffered from the motor

vehicle collision, and Allstate illegally withheld some $12,595.50 which is the property of Ms. Eckart.

41.

Ms. Eckart was therefore injured in her property as a victim of the Defendants and the other individuals' criminal and fraudulent conduct in violation of RICO.

42.

By virtue of the foregoing, Defendant Allstate is directly and vicariously liable to Plaintiff Eckart, and under 18 USCA §1964 she is thereby entitled to an award of compensatory damages against the Defendant in an amount to be trebled by operation of law.

COUNT II – Racketeer Influenced Corrupt Organizations Act at O.C.G.A. §16-14-1 et seq.

43.

The Plaintiff incorporates by reference the contents of this entire complaint as if fully set out herein.

44.

Allstate is an "enterprise" as defined in OCGA §16-14-3(5)(A).

14

45.

As more fully set out above, upon information and belief, Allstate through its officers, directors, management personnel and other employees developed and implemented a criminal and fraudulent scheme pursuant to which it would offer to settle claims of unsophisticated injured parties against its insureds for sums certain, require those claimants to first fully comply with the terms of the settlement agreements by return of executed releases, and then use various fraudulent schemes and artifices to justify sending payment to the claimants in amounts less than the contracted settlement amounts.

46.

Allstate through its officers, directors, management and non-management employees acting within the scope of their employment authorized, requested, commanded, performed, recklessly tolerated, acquiesced in and ratified the criminal and fraudulent conduct described above.

47.

Upon information and belief, Allstate and its employees have employed this criminal and fraudulent scheme against more than one victim on more than one occasion.

48.

Through implementation of this scheme, Allstate would illegally withhold for its sole use and benefit funds that were the lawful property of the claimants; thereby Allstate enjoyed significant financial benefits as a result of this criminal and fraudulent scheme.

49.

Pursuant to that criminal and fraudulent scheme, as more fully set out above, Defendant Allstate entered into a contract of settlement with Ms. Eckart whereby the insurer agreed to pay Ms. Eckart $16,378.00 in full settlement of all of her claims arising from a motor vehicle accident caused by the negligence of its insured.

50.

At no time did Allstate intend to pay Ms. Eckart $16,378.00. Rather, Allstate employed its routine scheme and artifice to reduce the $16,378.00 contract amount to a net sum of $560.00 to be paid to Ms. Eckart. Through this false promise, scheme and artifice, Allstate induced Ms. Eckart to enter the settlement agreement thereby relinquishing her right to pursue just compensation, and her right to be made whole with respect to the damages she suffered from the motor vehicle collision, and it illegally withheld some $12,595.50 which is the property of Ms. Eckart.

16

51.

Allstate's unlawful conduct constitutes theft by taking pursuant to O.C.G.A. §16-8-3 and theft by conversion pursuant to OCGA §16-8-4.

52.

Theft by taking and theft by conversion are "racketeering activities" pursuant to OCGA §16-14-3(5)(A)(xii).  By engaging in at least two acts of racketeering activity in furtherance of this scheme and artifice and for the purpose of unlawfully appropriating the funds belonging to those entering settlement contracts, Allstate by and through its employees engaged in a "pattern of racketeering activity" pursuant to OCGA §3-14-3(4)(A).

53.

In these actions, Allstate by and through its employees intentionally, directly and unlawfully withheld and maintained money belonging to injured claimants through a pattern of racketeering activity in violation of OCGA §16-14-4(a).  In these actions, Allstate's employees conducted and participated in the enterprise through a pattern of racketeering activity in violation of OCGA §16-14-4(b).

54.

Allstate enjoyed significant financial benefits, and Ms. Eckart was directly, financially harmed by Allstate's criminal and fraudulent conduct described above.

55.

Based on the foregoing, Ms. Eckart is entitled to an award of special, general and punitive damages against Defendant Allstate. And said damages are trebled by operation of law. OCGA §16-14-6.

56.

Ms. Eckart is also entitled to an award of attorney's fees, as well as the costs of litigation and investigation against Defendant Allstate pursuant to OCGA§16-14-6.

57.

Allstate is directly liable and vicariously liable for the criminal and fraudulent conduct of its employees by application of the doctrine of *respondeat superior*.

COUNT III – Claim of fraud in the inducement against Defendant Allstate

58.

The Plaintiff incorporates by reference the contents of this entire complaint as if fully set out herein.

59.

Defendant Allstate entered into a contract of settlement with Ms. Eckart – the terms of which are memorialized in its Release of All Claims document Allstate provided to Ms. Eckart – whereby the insurer agreed to pay Ms. Eckart $16,378.00 in full settlement of all claims. The exact details of the fraudulent scheme are fully set out in paragraphs 12-19 of this complaint which are hereby incorporated into this paragraph and Count.

60.

At all relevant times, Allstate had no intention of paying Ms. Eckart $16,378.00. Allstate had a clear intent to deceive Ms. Eckart by promising to pay the false amount to her in settlement of her claims, and Allstate did so to induce Ms. Eckhart to sign the Release of All Claims document and thereby extinguish all her claims against Defendant Allstate and its insured.

61.

Ms. Eckart justifiably relied upon Defendant Allstate's representation that it would pay her the full contractually agreed upon

settlement amount and she therefore executed Allstate's "Release of All Claims" document and tendered it to Allstate thereby extinguishing all of her claims against both Allstate and its insured, Ballew.

62.

Allstate's conduct constitutes actual fraud in the inducement in that 1) the Defendant insurer had no intention to pay the contracted settlement amount from the outset and 2) the insurer misrepresented to Ms. Eckart an existing material fact – that it was paying the contracted settlement amount – to induce Ms. Eckart to enter the contract of settlement.

63.

Upon information and belief, Allstate's wrongful conduct described herein was pursuant to the Defendant insurer's normal course of business and normal practices which dictated the course of its fraudulent conduct at and before its pursuit of the contract of settlement in this case.

64.

As a result of Allstate's intentional fraudulent conduct, Ms. Eckart is now left with no recourse to be justly compensated and made whole for the damages that she sustained in the above-described motor vehicle collision. She has been rendered angry, humiliated, embarrassed, tricked, defrauded,

shamed, upset, worried, uncertain and she has suffered a host of other harms as a result of by Defendant Allstate's intentional fraudulent conduct.

65.

As a result of the foregoing, the Plaintiff is entitled to as award of special damages in an amount to fully compensate her for all of the damages she sustained in the subject motor vehicle accident, general damages for her wounded feelings resulting from the fraud as described above, and an award of punitive damages for Allstate's intentional fraudulent conduct.

66.

The Plaintiff is also entitled to an award of attorney's fees and expenses of litigation based on Defendant Allstate's intentional fraudulent conduct as provided by Georgia law.

COUNT III – Recission of the settlement contract/Release of All Claims

67.

The Plaintiff incorporates by reference the contents of this entire complaint as if fully set out herein.

68.

Defendant Allstate entered into a contract of settlement with Ms.

Eckart – the terms of which are memorialized in its Release of All Claims

document Allstate provided to Ms. Eckart – whereby the insurer agreed to

pay Ms. Eckart $16,378.00 in full settlement of all claims. The exact

details of the fraudulent scheme are fully set out in paragraphs 12-19 of this

complaint which are hereby incorporated into this paragraph and Count.

69.

At all relevant times, Allstate had no intention of paying Ms. Eckart

$16,378.00. Allstate had a clear intent to deceive Ms. Eckart by offering to

pay the false amount to her in settlement of her claims, and Allstate did so

to induce Ms. Eckhart to sign the Release of All Claims document and

thereby extinguish all her claims against Allstate and its insured.

70.

Allstate's conduct constitutes actual fraud in the inducement in that

1) it had no intention to pay the contracted settlement amount from the

outset and 2) it misrepresented to Ms. Eckart an existing material fact – that

it was paying the contracted settlement amount – to induce Ms. Eckart to

enter the contract of settlement. The contract is therefore rendered

voidable under Georgia law.

71.

Upon receipt of the reduced settlement check, Ms. Eckart (through undersigned counsel) immediately notified Defendant Allstate, in writing, of her intent to rescind the contract of settlement, she demanded that Allstate immediately agree to the recission of the Release of All Claims document.  Ms. Eckart also immediately tendered the $3,782.00 settlement check back to Allstate.

72.

Defendant Allstate has not responded in any way to that communication at this time.

73.

Based on the foregoing, the Plaintiff is entitled to this Court's order that the contract of settlement entered between these Parties, as memorialized in the fraudulently induced Settlement of All Claims document, is rescinded.

WHEREFORE, the Plaintiff prays for the following:

a) That service of process be had upon the Defendant,

b) That this case be tried before a jury of no less than 6 fair and impartial jurors;

c) That Plaintiff be awarded compensatory damages against Defendant for federal RICO violations in an amount to compensate her for her for all monetary losses sustained as a result of said conduct and that the amount be trebled by operation of law;

d) That Plaintiff be awarded special damages against Defendant for fraud and Georgia RICO violations in an amount to compensate her for her for all monetary losses sustained as a result of said conduct;

e) That the Plaintiff be awarded general damages against Defendant for fraud and Georgia RICO violations in an amount to be determined by the enlightened conscience of fair and impartial jurors;

f) That Plaintiff be awarded punitive damages against Defendant for fraud and RICO violations in an amount to be determined by the Jury;

g) That Plaintiff be awarded her attorney's fees, litigation and investigation costs as provided by Georgia law,

h) That the Jury's awards under Georgia RICO be trebled as provided by Georgia law;

24

i)  That the Court issue its order rescinding the settlement

    contract/Release of All Claims previously entered by parties,

j)  That the Plaintiff be granted all other relief that the Court deems

    appropriate.

This $\underline{24^{th}}$ day of January, 2022

                        Perrotta, Lamb & Johnson, LLC


                        Robert W. Lamb
                        Georgia Bar Number: 631650

222 East Main Street
Cartersville, Georgia 30120
(770) 382-8900

25