UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANA E. MEDINA ECKART, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 1:22-CV-00281-JPB |
| ALLSTATE NORTHBROOK INDEMNITY COMPANY, | |
| Defendant. | |

# ORDER

This matter is before the Court on Allstate Northbrook Indemnity Company's ("Defendant") Motion to Dismiss Complaint with Prejudice [Doc. 8]. This Court finds as follows:

## BACKGROUND

This case arises out of a motor vehicle accident and the subsequent settlement negotiations between an insurance company and an injured party. On January 24, 2022, Ana Eckart ("Plaintiff") filed this action against Defendant alleging the following: (1) violation of 18 U.S.C. § 1961 (the federal Racketeer Influenced and Corrupt Organizations Act (RICO) statute); (2) violation of O.C.G.A. § 16-14-1 (the Georgia RICO statute); (3) fraud in the inducement; and (4) recission of the settlement contract. [Doc. 1].

On March 1, 2022, Defendant filed the instant Motion to Dismiss. [Doc. 8]. Defendant attached several exhibits to its motion, including two e-mails and a settlement release agreement (the "Release"). [Doc. 9]. The motion is now ripe for review.

In this case, the Court must first decide whether it can consider the exhibits attached to Defendant's Motion to Dismiss. As a general rule, courts are not permitted to look beyond the pleadings when deciding a Rule 12(b)(6) motion. Kalpakchian v. Bank of Am. Corp., 832 F. App'x 579, 582 (11th Cir. 2020). An exception to this general rule exists, however. The Eleventh Circuit Court of Appeals has adopted the "incorporation by reference" doctrine, which allows a court to consider documents attached to a motion to dismiss if the documents are "referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." Hi-Tech Pharms., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018).

In applying the test above, the Court must first determine whether the extrinsic evidence was referred to in the complaint. This requirement is satisfied because Plaintiff specifically refers to the two e-mails and the Release in her Complaint. [Doc. 1, pp. 5-7].

The Court must next analyze whether the extrinsic evidence is central to Plaintiff's claim. Plaintiff does not contend that the centrality requirement is not satisfied. Because a primary issue in this case concerns whether Defendant made fraudulent misrepresentations to Plaintiff in the e-mails and in the Release, the Court finds that the exhibits are central to Plaintiff's claims.

Undisputed authenticity is the final element the Court must address. "A plaintiff can dispute the authenticity of a document simply by saying that the proffered document is not the one referred to in her complaint." Kalpakchian, 832 F. App'x at 583. In this case, Plaintiff does not dispute the authenticity of the exhibits. In other words, Plaintiff does not claim that the e-mails attached to Defendant's motion were not the e-mails at issue or that the Release is different from the one referred to in her Complaint. As such, the Court finds that the final element is also satisfied.

In conclusion, the Court finds that the incorporation by reference doctrine applies because the exhibits are referred to in Plaintiff's Complaint, are central to Plaintiff's claims and are of undisputed authenticity. The Court will thus consider the exhibits in resolving the instant motion.

# FACTS

The relevant facts, as presented by Plaintiff's Complaint and as depicted by the exhibits, are as follows.

On January 8, 2020, Plaintiff was involved in a motor vehicle collision with Crista Ballew. [Doc. 1, p. 3]. Plaintiff alleges that she sustained personal injuries in the collision and incurred medical and related expenses, including lost wages and pain and suffering. Id.

At the time of the collision, Ballew was insured under an automobile liability insurance policy issued by Defendant. Id. at 4. In early 2021, Defendant allegedly offered to settle all of Plaintiff's claims. Id. According to Plaintiff, Defendant agreed to pay her $16,378.00 in exchange for releasing all claims against Defendant and Ballew. Id. at 4-5.

On February 1, 2021, Defendant e-mailed Plaintiff the Release as well as a letter about the settlement. Id. at 5; [Doc. 9-1]; [Doc. 9-2]. Plaintiff describes the letter as containing some "vague, confusing and perhaps even contradictory language." [Doc. 1, p. 5]. The letter stated that "[t]he total value of your claim is $16,378.00." [Doc. 9-2, p. 2]. The letter broke the claim down as follows:

- $15,818.00 will be paid to the medical providers;
- $30.00 will go to Plaintiff for the prescriptions;
- $280.00 will go to Plaintiff for the time missed from work; and
- $250.00 will go to Plaintiff for personal compensation.

<u>Id.</u>  The Release provided that "in consideration of the sum of [$16,378.00], receipt whereof is hereby acknowledged," Plaintiff agrees to "release and forever discharge" Ballew and Defendant from any and all claims arising out of the January 8, 2020 accident.  [Doc. 9-1, p. 2].

Plaintiff signed the Release on February 3, 2021, and returned it to Defendant.  [Doc. 1, p. 6].  On February 4, 2021, Defendant sent Plaintiff another e-mail.  <u>Id.</u> at 7.  Plaintiff contends that Defendant "drafted some nonsense" in the e-mail "but in relevant part notified [Plaintiff] that she would not receive the promised settlement check in the amount of $16,378.00; rather [Defendant] would send her a check in the amount of $3,782.50."  <u>Id.</u>  In addition to informing Plaintiff of the adjusted check, Defendant instructed Plaintiff to pay all but $560.00 of the settlement to her medical providers.  <u>Id.</u>

The February 4, 2021 e-mail explained to Plaintiff that one of the medical providers, Cartersville Medical Center, adjusted its bill in the amount of $12,595.50, leaving a balance of only $1,399.50, instead of a balance of $13,995.00.  [Doc. 9-3, p. 2].  As a result, Defendant informed Plaintiff that the bodily injury check would be reduced to $3,782.50 to account for the adjusted medical bill.  The new breakdown of the claim was as follows:

- $1,399.50 for the remaining balance of the ER bill from Cartersville Medical Center;
- $1,528.00 for the ER physician bill from Mount Lassen ER Physicians;
- $295.00 for the radiology bill from Summit Radiology Services;
- $30.00 for the prescriptions that Plaintiff paid out of pocket;
- $280.00 to Plaintiff for the time missed from work; and
- $250.00 to Plaintiff for personal compensation.

Id. at 2. Defendant mailed the reduced check to Plaintiff on February 5, 2021. [Doc. 1, p. 7].

In her Complaint, Plaintiff alleges that Defendant never had any intention of paying her $16,378.00 and that "[t]he false promise to pay that amount was made pursuant to a fraudulent scheme and artifice to induce [Plaintiff] to execute and tender [the Release] to Defendant, while paying [Plaintiff] only a small fraction of the promised and agreed upon" amount. Id. Plaintiff further alleges that Defendant has in place "policies, protocols and/or customs pursuant to which it routinely enters into firm, binding settlement agreements with those injured," and then upon receipt of the releases, "[Defendant] through its employees and agents forwards settlement checks to those persons in amounts far below the agreed upon settlement amounts." Id. at 8.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and

constru[es] them in the light most favorable to the plaintiff." Traylor v. P'ship Title Co., 491 F. App'x 988, 989 (11th Cir. 2012).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement.  Id.  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (citation omitted).  In sum, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678).  While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations.  Iqbal, 556 U.S. at 678.

Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to "state with particularity the circumstances constituting fraud." To meet this pleading standard, "a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [plaintiff]; and (4) what the defendants gained by the alleged fraud.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997)). This heightened pleading requirement serves an important purpose: to "provide the defendants with sufficient notice of the acts of which plaintiff complains to enable them to frame a response, prevent fishing expeditions to uncover imagined wrongs, and protect defendants from unfounded accusations of immoral and otherwise wrongful conduct." U.S. ex rel. Clausen v. Lab'y Corp. of Am., 198 F.R.D. 560, 562 (N.D. Ga. 2000), aff'd, 290 F.3d 1301 (11th Cir. 2002).

## DISCUSSION

In its motion, Defendant argues that dismissal is required because this lawsuit is an impermissible direct action against an insurer by a third-party

claimant and Plaintiff's claims do not satisfy the applicable pleading standards.[1]  The Court agrees.

### A. Impermissible Direct Action

The Court will first address whether this is an impermissible direct action.  As a general rule, "a party may not bring a direct action against the liability insurer of the party who allegedly caused the damage *unless* there is an unsatisfied judgment against the insured *or it is specifically permitted either by statute or a provision in the policy*."  Caudill v. Strickland, 498 S.E.2d 81, 82 (Ga. Ct. App. 1998).  Direct actions against insurers are prohibited on the rationale "that the injured party is not in privity of contract with the insurer and may not maintain a direct action on the contract for payment of a claim unless a judgment obtained against the insured under the liability policy remains unsatisfied."  Id. at 83.  The Eleventh Circuit has applied this rule to preclude claims for compensatory damages that arise under a liability contract.  Tiller v. State Farm Mut. Auto. Ins. Co., 549 F. App'x 849, 854 (11th Cir. 2013).

It is undisputed that Plaintiff has not secured a judgment against Ballew, Defendant's insured.  It is also undisputed that none of the statutory exceptions

---

[1] Defendant also argues that any reliance on an alleged misrepresentation is patently unreasonable.  Because the other two arguments are dispositive, this argument will not be addressed.

apply and that the insurance policy at issue does not authorize third parties to file direct actions against the insurer.  Nevertheless, Plaintiff contends that this is not an improper direct action because "she seeks no damages for bad faith failure to settle" and "in no way seeks to assert, implicate or even reference [Defendant's] duties under the automobile insurance policy it issued."  [Doc. 12, pp. 9-10].

This Court recognizes that Plaintiff has asserted RICO claims and claims for fraud and recission.  These claims, however, are merely "dressed up" claims for compensatory damages for the automobile accident at issue.  See Tiller, 549 F. App'x at 854 (characterizing a plaintiff's fraud and declaratory relief claims as "dressed up" claims for compensatory damages).  Indeed, review of Plaintiff's allegations makes clear that she believes that her insurance claim was worth $16,378.00 and that she should have been paid that amount by Defendant.  More specifically, in the federal RICO claim, Plaintiff alleges that she was not "made whole with respect to the damages she suffered from the motor vehicle collision" because Defendant "illegally withheld some $12,595.50."  [Doc. 1, pp. 13-14].  Plaintiff then asserts that she is entitled to an award of "compensatory damages."  Id. at 14.  In the claim for fraud in the inducement, Plaintiff similarly argues that she was promised $16,378.00 and that she "is entitled to [an] award of special

damages in an amount to fully compensate her for all of the damages she sustained in the subject motor vehicle accident." Id. at 19-21.

The Court acknowledges that Plaintiff also seeks damages for "her wounded feelings" and an award of punitive damages. Id. at 21. While these requests arguably expand the scope of relief, "the point, purpose, and effect of [each] claim is still to compensate [Plaintiff] for the alleged underpayment. And that, not the name that [Plaintiff] give[s] the claims and relief sought," controls the conclusion that this is an improper direct action. Tiller, 549 F. App'x at 854 (determining that a plaintiff's claims for compensatory damages, punitive damages and injunctive relief amounted to claims for compensatory damages). In sum, because Plaintiff has not obtained a judgment from Ballew (the insured) and seeks compensatory damages to make herself whole from the accident, Plaintiff does not have standing to bring this direct action against Defendant.

B.   **Failure to State a Claim**

Even though Plaintiff lacks standing to bring this direct action, the Court will nonetheless address whether the Complaint states a claim to relief. Plaintiff asserts four causes of action in this case: (1) violation of the federal RICO statute; (2) violation of the Georgia RICO statute; (3) fraud in the inducement; and (4) recission of the settlement contract based on fraud in the inducement. Below, the

Court will analyze whether Plaintiff has satisfied the pleading requirements for each of the causes of action.

1. The RICO Claims

As already stated above, Plaintiff seeks relief under both the federal RICO statute and the Georgia RICO statute. To state a RICO claim,[2] "a plaintiff must allege each of the following four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). Importantly, when bringing a RICO claim, a plaintiff is held to Rule 9(b)'s heightened pleading standard. Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity.").

In essence, Plaintiff's Complaint alleges that "Allstate, Roberts[3] and [Allstate's] various officers, directors, management and non-management personnel" were involved in a criminal and fraudulent scheme whereby Defendant

---

[2] The Eleventh Circuit has recognized that "[t]he federal and Georgia RICO acts are 'essentially identical.'" Cisneros v. Petland, Inc., 972 F.3d 1204, 1221 (11th Cir. 2020) (quoting Feldman v. Am. Dawn, Inc., 849 F.3d 1333, 1342 (11th Cir. 2017)). As a result, the Court will analyze together the federal and Georgia RICO claims.

[3] Dwalyn Roberts, who wrote the e-mails and communicated with Plaintiff, is an adjuster employed by Defendant.

"would offer to settle claims of unsophisticated injured parties . . . for sums certain," require those parties to release their claims "and then use various fraudulent schemes and artifices to justify sending payment to the claimants in amounts less than the contracted settlement amounts." [Doc. 1, pp. 10-11]. Plaintiff further alleges that Defendant "and its employees have employed this criminal and fraudulent scheme against more than one victim on more than one occasion." Id. at 11.

This Court finds that Plaintiff's Complaint fails to plausibly allege RICO claims for several different reasons. As an initial matter, Plaintiff has failed to allege facts showing the existence of an enterprise. For RICO purposes, an "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Particularly relevant here, a plaintiff "may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees." Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1357 (11th Cir. 2016).

In this case, Plaintiff alleges that the enterprise consists of Defendant, Roberts and Defendant's various officers, directors, management and non-

management personnel.  Because Plaintiff has alleged nothing more than a corporate defendant acting through its officers and employees, the Court finds that Plaintiff has not sufficiently pled the existence of an enterprise.  See id. (stating that "a corporate defendant acting through its officers, agents, and employees is simply a corporation"—not an enterprise for RICO purposes).

Plaintiff has also failed to sufficiently allege a pattern of racketeering activity.  To establish a pattern of racketeering activity, a plaintiff must show that: "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature."  Dixon v. Green Tree Servicing, LLC, 859 F. App'x 373, 376 (11th Cir. 2021) (quoting Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1264 (11th Cir. 2004)).

In her Complaint, Plaintiff alleges, in conclusory fashion, that Defendant has committed mail fraud and wire fraud "on more than one occasion against more than one victim."  [Doc. 1, p. 12].  Plaintiff, however, never identifies when Defendant committed these other predicate acts of mail or wire fraud or whether they were related to one another.  Importantly, Defendant does not describe these other predicate acts with any sort of specificity.  In sum, the Court concludes that

these general allegations of a pattern of racketeering activity do not satisfy the heightened pleading requirements contained in Rule 9(b).

To summarize, Plaintiff has failed to sufficiently allege the existence of an enterprise and a pattern of a racketeering activity, and therefore Plaintiff has not stated a claim for a violation of either RICO statute. In reaching this conclusion, the Court need not consider whether Plaintiff showed the other elements necessary for RICO liability.

2. Fraud in the Inducement

Plaintiff also asserts a claim for fraud in the inducement, which, like the RICO claims, is subject to Rule 9(b)'s heightened pleading standard. See Am. Dental, 605 F.3d 1283 at 1291-92. "Fraud in the inducement claims do not attack a contract's terms, but rather attack the circumstances surrounding the making of the contract." J'Carpc, LLC v. Wilkins, No. 1:06-cv-02357, 2007 WL 4287765, at *5 (N.D. Ga. Dec. 5, 2007). In Georgia, "[a] fraud in the inducement claim . . . requires that the defendant make a false promise in order to induce agreement and which the defendant does not, at the time of promising, intend to perform." Id. at *6. To adequately plead a claim for fraud in the inducement, a plaintiff must allege: (1) a false representation; (2) scienter; (3) intent to induce the plaintiff to act or to refrain from acting; (4) justifiable reliance; and (5) damage proximately

caused by the representation. JarAllah v. Schoen, 531 S.E.2d 778, 780 (Ga. Ct. App. 2000).

In this case, Plaintiff seems to allege the fraudulent inducement elements in her Complaint. For instance, she alleges that Defendant had no intention to pay the contracted settlement amount from the outset and that the misrepresentation was made to induce Plaintiff to enter into the contract. She also alleges that she justifiably relied upon Defendant's representation. Plaintiff, however, offers no facts in support of the statement that Defendant never intended to pay the contracted amount or that she justifiably relied on the misrepresentation. Without more, these are conclusory assertions that the Court is not required to accept as true. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim to relief. Iqbal, 556 U.S. at 678. In other words, merely reciting the elements is not enough to survive a motion to dismiss, especially where a claim must be pled with particularity. Here, Plaintiff completely fails to allege any facts supporting her assertion that Defendant had no intention to pay $16,378.00 at the time it made the initial settlement offer. Indeed, when Defendant offered to pay Plaintiff that particular amount, it sent a letter to Plaintiff fully explaining the breakdown of the claim. There is certainly no indication that Defendant knew that one of the

hospital bills would be adjusted to a lower amount when it sent the initial letter or that it would have reduced the settlement amount even if the hospital bill was not adjusted. In sum, Plaintiff's allegations do not show that, at the time when Defendant promised to pay Plaintiff approximately $16,000.00, it intended for that representation to be false. As a result, this Court finds that Plaintiff has failed to sufficiently allege a claim for fraud in the inducement.

### 3. Recission of the Settlement Contract

In her Complaint, Plaintiff asserts that she is able to rescind the contract because Defendant's conduct constituted actual fraud in the inducement. Plaintiff, however, pleads no facts to support her assertion of fraud in the inducement. For the same reasons that the fraud in the inducement count is subject to dismissal, this count is likewise subject to dismissal. The Court finds that Plaintiff has not stated a claim for recission.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Complaint with Prejudice [Doc. 8] is **GRANTED**. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 17th day of February, 2023.

_____
J. P. BOULEE
United States District Judge